FILED

2017 Mar-17  PM 12:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **KENNETH D. MCCORKLE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  7:15-CV-824-MHH** |
| | } | |
| **NANCY A. BERRYHILL,** | } | |
| **Acting Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 1383(c)(3), plaintiff Kenneth McCorkle seeks judicial review of a final adverse decision of the Commissioner of Social Security.[1] The Commissioner denied Mr. McCorkle's claim for supplemental security income. After careful review, the Court affirms the Commissioner's decision.[2]

---

[1] Mr. McCorkle was born on December 15, 1995. (Doc. 7-7, p. 2). Mr. McCorkle was 15 years old when his mother, Vanetta Horn, filed an application for supplemental security income on his behalf. (Doc. 7-6, p. 2). For purposes of this opinion, because the legal standards apply to Mr. McCorkle and his impairments, the Court will refer to Mr. McCorkle, rather than Ms. Horn, as the plaintiff.

[2] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. (*See* https://www.ssa.gov/agency/commissioner.html). Therefore, the Court asks the Clerk to please substitute Ms. Berryhill for Carolyn W. Colvin as the defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

## I.      PROCEDURAL HISTORY

Mr. McCorkle applied for supplemental security income on December 20, 2010.  (Doc. 7-6, p. 2).  Mr. McCorkle alleges that his disability began on January 22, 2009.  (Doc. 7-6, p. 2).  The Commissioner denied Mr. McCorkle's claim on April 7, 2011.  (Doc. 7-5, pp. 2-5).  Mr. McCorkle requested a hearing before an Administrative Law Judge (ALJ).  (Doc. 7-5, p. 8).  The ALJ issued an unfavorable decision on August 20, 2013.  (Doc. 7-3, pp. 20-40).  On March 23, 2015, the Appeals Council declined Mr. McCorkle's request for review (Doc. 7-3, pp. 2-4), making the Commissioner's decision final and a proper candidate for this Court's judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## II.     STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d

2

1155, 1158 (11th Cir. 2004).  In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ.  *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted).  If the ALJ's factual findings are supported by substantial evidence, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings."  *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

For a claimant under age 18 to qualify for supplemental security income benefits, he must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The

ALJ follows a three-step, sequential evaluation process to make this determination. The ALJ considers: (1) whether the child is engaged in substantial and gainful activity; (2) whether the child has an impairment or combination of impairments that is severe; and (3) whether the child's impairment meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.924(a)–(d). In doing so, the ALJ considers "all relevant evidence" in a claimant's case record. 20 C.F.R. § 416.924(a).

To determine if a severe impairment functionally equals a listing, the ALJ must assess the claimant's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). An impairment "is of listing level severity if [the claimant has] 'marked' limitations in two of the domains . . . or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(d).

A child's impairment or combination of impairments constitutes a "marked" limitation when it interferes "seriously" with his ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A child's impairment or combination of impairments constitutes an "extreme" limitation when it interferes "very seriously" with his ability to "independently initiate,

sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). "[N]o single piece of information taken in isolation can establish whether [a claimant has] a 'marked' or 'extreme' limitation in a domain." 20 C.F.R. § 416.926(a)(e)(4).

In this case, the ALJ found that Mr. McCorkle has not engaged in substantial gainful activity since December 17, 2010, the benefits application date. (Doc. 7-3, p. 26).[3] The ALJ determined that Mr. McCorkle suffers from the following severe impairments: learning disorder, attention deficit hyperactivity disorder, mood disorder NOS, oppositional defiant disorder/conduct disorder, and migraine/headaches. (Doc. 7-3, p. 26). Based on a review of the medical evidence, the ALJ concluded that Mr. McCorkle's severe impairments, singly or in combination, neither meet nor medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart A, Appendix 1. (Doc. 7-3, p. 26). Moreover, the ALJ found that Mr. McCorkle has "less than marked" limitations in each of the six domains, except Mr. McCorkle has "no limitation" in the domain of moving and manipulating objects. (Doc. 7-3, pp. 33–40). Accordingly, the ALJ determined that Mr. McCorkle is not disabled within the meaning of the Social Security Act. (Doc. 7-3, p. 40).

---

[3] The application contained in the administrative record is dated December 20, 2010. (Doc. 7-6, p. 2). The discrepancy between the application date contained in the ALJ's decision and in the administrative record is immaterial to the Court's analysis.

## IV.   ANALYSIS

Mr. McCorkle argues that he is entitled to relief from the ALJ's decision because (1) the ALJ failed to find at Step Two that Mr. McCorkle does not suffer from mild intellectual disability; and (2) the ALJ erred in finding that Mr. McCorkle does not meet the intellectual disability listing in 20 C.F.R., Subpart P, Appendix 1, §112.05 (Listing 112.05).[4]   The Court examines both issues in turn.

### A.   The ALJ's determination that Mr. McCorkle does not suffer from mild intellectual disability at Step Two constitutes harmless error.

Mr. McCorkle contends that the ALJ erred at Step Two by failing to find that Mr. McCorkle suffers from mild intellectual disability.  (Doc. 9, pp. 2–10).  A claimant bears the burden of proving "at step two that he has a medically severe impairment or combination of impairments."  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  The Eleventh Circuit has stated that "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx. 823, 825 (11th Cir. 2010) (citing

---

[4] In their memoranda and evidence, the parties use the term "mental retardation" instead of "intellectual disability."  When the ALJ issued his decision in August 2013, Listing 112.05 was the listing for childhood mental retardation.  Effective September 3, 2013, the Commissioner amended Listing 112.05 by replacing the term "mental retardation" with "intellectual disability." *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499–01 (Aug. 1, 2013).  The change "does not affect the actual medical definition of the disorder or available programs or service."  *Id*. at 46,500.  The Court discusses the listing using the terminology that the Commissioner adopted in September 2013, rather than the terminology in effect when the ALJ issued his decision.  The Social Security Administration has since amended Listing 112.05 and now refers to "intellectual disability" as "intellectual disorder."  As explained below, the most recent amendments to Listing 112.05 do not apply to the Court's analysis. *See infra* footnote 6.

*Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1991) (applying the harmless error doctrine to social security cases)); *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("[T]he finding of any severe impairment whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two."); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 949, 951 (11th Cir. 2014) ("[S]tep two requires only a finding of 'at least one' severe impairment to continue on to the later steps.") (quoting *Jamison*, 814 F.2d at 588); *Packer v. Comm'r of Soc. Sec.*, 542 Fed. Appx. 890, 892 (11th Cir. 2013) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied.  Indeed, since the ALJ proceeded beyond step two, any error in failing to find that [the claimant] suffers from the additional severe impairments of degenerative joint disease of the right knee or varicose veins would be rendered harmless.").[5]

---

[5] The Court recognizes that the cases on which it relies involve Step Two in adult disability cases, and this is a childhood disability case.  At Step Two in both adult disability and childhood disability cases, the ALJ must determine whether a claimant has a severe impairment.  *Compare* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (adult) ("At the second step, we consider the medical severity of your impairment(s)."), *with* 20 C.F.R. § 416.924(a) (child) ("[W]e will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe.").  The definitions for severity are different in childhood and adult disability cases.  *Compare* 20 C.F.R. §§ 404.1521(a), 416.921(a) (adult) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."), *with* 20 C.F.R. § 416.924(c) (child)

Here, even if the ALJ erred at Step Two by failing to find that Mr. McCorkle suffers from the severe impairment of mild intellectual disability, the error is harmless because (1) the ALJ found that Mr. McCorkle has several severe impairments, namely a "learning disorder, attention deficit hyperactivity disorder, mood disorder NOS, oppositional defiant disorder/conduct disorder, and migraine[]headaches"; (2) the ALJ continued the sequential evaluation process; and (3) the ALJ considered mild intellectual disability at later steps in the sequential analysis.   (Doc. 7-3, p. 26; *see generally* Doc. 7-3, pp. 26-40). Accordingly, any error at Step Two relating to a failure to classify mild intellectual disability as a severe impairment is harmless.

## B. Substantial evidence supports the ALJ's conclusion that Mr. McCorkle does not meet a Listing.

Mr. McCorkle argues that his IQ score of 56 is valid and that his IQ score, standing alone, satisfies Listing 112.05(C).   (Doc. 9, p. 10).   Mr. McCorkle contends that the ALJ committed reversible error because the ALJ failed to state the weight of the IQ score of 56.  (Doc. 9, pp. 9–10).  Mr. McCorkle asserts that he also satisfies Listing 112.05(D), which, as he points out, the ALJ failed to examine.

---

(An impairment is not severe if the "impairment(s) is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations").  The distinction does not affect the analysis.  Because the Court is determining, not whether Mr. McCorkle suffers from mild intellectual disability for purposes of Social Security benefits, but rather whether the ALJ erred in failing to classify mild intellectual disability as a severe impairment at Step Two, the difference is irrelevant for determining whether an error is harmless.  Therefore, the Court may rely on adult disability cases to guide the Court's analysis of harmless error.

(Doc. 9, pp. 9–16).  The Commissioner counters that "it is clear that the ALJ found [Mr. McCorkle's IQ score of 56] invalid."  (Doc. 10, p. 13).  The Commissioner contends that, because Mr. McCorkle's IQ score of 56 is invalid, and because Mr. McCorkle does not have another qualifying IQ score in the record, he cannot satisfy Listing 112.05(C) or 112.05(D).  (Doc. 10, pp. 11–13).  The Court addresses each issue in turn.

A plaintiff bears the burden of showing that his condition satisfies a listed impairment.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  The Social Security regulations at the time of the ALJ's decision provided:

> Intellectual disability: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
>
> . . . .
>
> C.   A valid verbal, performance, or full scale IQ of 59 or less; or
>
> D.   A valid verbal, performance, or full scale IQ of 60 through 70, and a physical or other mental impairment imposing an additional and significant limitation of function.
>
> . . . .

9

20 C.F.R. Pt. 404, Subpart P, App. 1, § 112.05 (effective through January 16, 2017).[6]

_____

[6] On September 26, 2016, the Social Security Administration revised Listing 112.05 effective January 17, 2017.   The Listing now provides:

Intellectual disorder (see 112.00B4), for children age 3 to attainment of age 18, satisfied by A or B:

A. Satisfied by 1 and 2 (see 112.00H):

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing) in excess of age-appropriate dependence.

OR

B. Satisfied by 1 and 2 (see 112.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

a. Understand, remember, or apply information (see 112.00E1); or
b. Interact with others (see 112.00E2); or
c. Concentrate, persist, or maintain pace (see 112.00E3); or
d. Adapt or manage oneself (see 112.00E4).

As a preliminary matter, Mr. McCorkle argues that his IQ score of 56 establishes conclusively that he is disabled for Social Security purposes. (Doc. 9, p. 10). Under the law in this circuit when Mr. McCorkle applied for benefits and when the Commissioner rendered her decision, to meet Listing 112.05(C), Mr. McCorkle must have had (1) "significantly subaverage general intellectual functioning;" (2) "deficits in adaptive functioning;" and (3) a "valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpart. P, App. 1, § 112.05; *see also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) (considering, under the adult version of Listing 112.05, "significantly subaverage general intellectual functioning" to be a separate requirement from "deficits in adaptive behavior"); *Jordan v. Comm'r of Soc. Sec. Admin.*, 470 Fed. Appx. 766, 768 (11th Cir. 2012) (citing *Crayton* and explaining that under the Listings, "a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well as satisfying one of the additional criteria, to prove

---

20 C.F.R. Pt. 404, Subpart P, App. 1, § 112.05 (effective January 17, 2017). Like the Commissioner, the Court analyzes Mr. McCorkle's claim for benefits under the regulations (and applicable case law interpreting and applying those regulations) that were in effect when the ALJ issued his decision. *See Soc. Sec. Admin.*, *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138–1 n.1, 2016 WL 5341732 (Sept. 26, 2016) ("[W]e will use these final rules on and after their effective date. . . . We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). Therefore, the citations to the regulations in this opinion are to those that were in effect at the time that the ALJ issued his decision.

entitlement to disability under Listing 12.05 or 112.05"); *Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 Fed. Appx. 748, 750 (11th Cir. 2011) ("[T]o be entitled to benefits, [the plaintiff] must prove that her son meets both the requirements in the diagnostic description of the introductory paragraph and the listed severity criteria in 112.05(D).").

Regarding the validity of Mr. McCorkle's IQ scores, the record contains evidence of three IQ examinations that produced three different scores. The ALJ found that Mr. McCorkle did not have a valid IQ score for purposes of Listing 112.05(C). On May 8, 2008, the Sumter County Board of Education administered to Mr. McCorkle the Universal Nonverbal Intelligence Test (UNIT). (Doc. 7-9, p. 12). At the time, Mr. McCorkle was 12 years-old and in the sixth grade. (Doc. 7-9, p. 12). Mr. McCorkle achieved a full scale IQ score of 90 on the UNIT, ranking his overall intelligence in the 25th percentile of the general population. (Doc. 7-9, p. 12). Mr. McCorkle's IQ score of 90 placed him "in the average range of cognitive abilities." (Doc. 7-9, p. 12).

The ALJ gave Mr. McCorkle's UNIT score "little weight" because Amy Cooper, Ph.D., a consultative psychological examiner, reported that "the test was administered more than two years ago and is outdated per DDS standards" and because the UNIT is "often known to artificially inflate scores." (Doc. 7-3, p. 27; Doc. 7-10, p. 23). The ALJ should have assigned no weight to Mr. McCorkle's

UNIT score.  Pursuant to Social Security regulations that were in effect at the time that the ALJ issued his decision, "IQ test results obtained between ages 7 and 16 should be considered current . . . for 2 years when the IQ is 40 or above."  20 C.F.R. § 404, Subpart P, App. 1, § 112.00(D)(10) (effective through January 16, 2017).  Mr. McCorkle's UNIT score of 90 expired in May 2010, and he applied for supplemental security income in December 2010.  (Doc. 7-6, pp. 2–7).  Because Mr. McCorkle's UNIT IQ score of 90 expired before he applied for supplemental security income, the ALJ should have assigned no weight to the UNIT score, but the difference between little and no weight is insignificant for purposes of this analysis.

Donald W. Blanton, Ph.D., a consultative psychological examiner, evaluated Mr. McCorkle's mental functioning on March 9, 2010 and again on March 6, 2013. (Doc. 7-10, pp. 3–5; Doc. 7-16, pp. 31–33).  On March 9, 2010, Dr. Blanton was unable to assess Mr. McCorkle's IQ score because of malingering.  (Doc. 7-10, p. 5).  According to Dr. Blanton, Mr. McCorkle "gave no effort at all" on the examination and he "appeared to deliberately do poorly."  (Doc. 7-10, p. 4).[7] Therefore, like the UNIT score, the March 2010 IQ exam results are invalid and are entitled to no weight.

_____

[7] Dr. Blanton stated that Mr. McCorkle never answered a question correctly and provided obviously wrong answers (such as defining a bicycle as "you talk to it" and referring to the shape of ball as "square").  (Doc. 7-10, pp. 4-5).

On March 6, 2013, Dr. Blanton again evaluated Mr. McCorkle's IQ.  (Doc. 7-16, pp. 31–33).  Dr. Blanton administered Mr. McCorkle the Wechsler Adult Intelligence Scale, Fourth Edition.  (Doc. 7-16, pp. 32–33).  This time, Mr. McCorkle obtained the following scores: Verbal Comprehension 62, Perceptual Reasoning 52, Working Memory 63, Processing Speed 68 and Full Scale IQ score 56.  (Doc. 7-16, p. 32–33).  Dr. Blanton stated that Mr. McCorkle's score constituted a valid assessment of his level of intellectual functioning at the time of testing.  (Doc. 7-16, p. 32).  Dr. Blanton indicated that Mr. McCorkle's IQ score of 56 positioned him in the mild range of intellectual disability, but Dr. Blanton gave Mr. McCorkle only a "provisional" diagnosis of mild intellectual disability.  (Doc. 7-16, p. 32).  The ALJ concluded that the validity of Dr. Blanton's assessed IQ score of 56 was "highly questionable" because Dr. Blanton found that Mr. McCorkle's depression could have affected his score and because Dr. Blanton determined that Mr. McCorkle was malingering when Dr. Blanton administered the IQ tests the first time in 2010.  (Doc. 7-3, p. 26; *see also* Doc. 7-16, pp. 31–32).

Mr. McCorkle argues that his IQ score of 56 is a valid score and the only valid IQ score in the record.  (Doc. 9, pp. 9–12).  Therefore, Mr. McCorkle argues, the ALJ had to rely on the IQ score of 56 in determining whether Mr. McCorkle met a Listing.  (Doc. 9, p. 9–12).  Dr. Blanton's full scale IQ score of 56 created "a rebuttable presumption that [Mr. McCorkle] satisfie[d] the diagnostic criteria for

intellectual disability." *Frame v. Comm'r of Soc. Sec.*, 596 Fed. Appx. 908, 911 (11th Cir. 2015) (citing *Hodges v. Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001)).  Nevertheless, remand is not warranted because Dr. Blanton's assessed IQ score of 56 "does not change the conclusion that the denial of benefits [] [i]s supported by substantial evidence." *McCants v. Comm'r of Soc. Sec.*, 605 Fed. Appx. 788, 791 (11th Cir. 2015).

As explained above, Mr. McCorkle's qualifying IQ score alone is not sufficient to establish intellectual disability.  *See Harris v. Comm'r of Soc. Sec.*, 505 Fed. Appx. 874, 876 (11th Cir. 2013) ("A valid IQ score need not be conclusive of [intellectual disability] where the IQ score is inconsistent with the other evidence regarding the claimant's daily activities and behavior.") (citing *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)); *see also Popp v. Heckler*, 779 F.2d 1497, 1500 (11th Cir. 1986) (per curiam) ("[T]he ALJ was not required to find that [the claimant had an intellectual disability] based on the results of the IQ test.  The ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior.").  Here, the ALJ properly examined other evidence in the record, and substantial evidence supports the ALJ's conclusion that Mr. McCorkle does not have significantly subaverage intellectual functioning with deficits in adaptive functioning as required by Listing 112.05(C).  Consequently, the Court does not need to decide whether the ALJ

properly determined that the validity of the IQ score of 56 was "highly questionable." (*See* Doc. 7-3, p. 26).[8]

The ALJ found that Mr. McCorkle has a learning disorder, not an intellectual disability. (Doc. 7-3, pp. 27). The ALJ's determination that Mr. McCorkle does not have significantly subaverage intellectual functioning is supported by evidence in the administrative record. While Mr. McCorkle received special modifications and accommodations on his schoolwork and tests, he attended general education classes. (Doc. 7-3, p. 34; Doc. 7-8, p. 25). He attended school daily and was enrolled in history, math, reading, fine arts, English, science, and other courses. (Doc. 7-8, pp. 3–10). Mr. McCorkle never repeated a grade, and his high school grades varied widely. (Doc. 7-3, p. 34; Doc. 7-8, pp. 3–9, 25).

_____

[8] If Mr. McCorkle had shown that a valid, qualifying IQ score could have saved his claim, then there may have been a basis for remand. An ALJ has "a basic duty to develop a full and fair record," even though "the claimant bears the burden of proving that he is disabled," and despite the claimant's "responsib[ility] [to] produc[e] evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). In the Eleventh Circuit, if additional tests are needed to make an informed decision, then it is error for the ALJ to fail to secure that additional medical evidence. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). But based on the record in this case and the applicable law, an additional IQ score, no matter how low, would not have saved Mr. McCorkle's claim. Accordingly, any error in not obtaining another IQ score is harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (classifying certain errors as harmless in the context of the substantial evidence standard); *see, e.g.*, *Prunty v. Acting Com'r of Soc. Sec. Admin.*, 635 Fed. Appx. 757, 760 (11th Cir. 2015) ("Although an ALJ is responsible for developing a full and fair record, the burden is still on the claimant to prove she is disabled. *See Barnhart*, 355 F.3d at 1276. Here, the record contained the multiple IQ tests that [the claimant] had taken. Even if another medical expert had been called upon to evaluate her potential disability, [the claimant] would not have qualified for SSI benefits based on her failure to show deficits in her adaptive functioning.").

He was scheduled to take the Alabama High School Graduation Exam during the 2011–2012 school year.  (Doc. 7-8, p. 25).

Ms. Nicholson, Mr. McCorkle's junior high and high school special education teacher, worked individually with him to ensure that he received the accommodations and modifications necessary to complete his work in his general education classes.  (Doc. 7-9, p. 13–22).  On March 3, 2009, Ms. Nicholson indicated that Mr. McCorkle had no serious problems attending and completing tasks.  (Doc. 7-9, p. 6).  On March 20, 2013, Ms. Nicholson stated that Mr. McCorkle was "able to complete his work with modification[s] and accommodations."  (Doc. 7-9, p. 21).  For instance, for the 2010–2011 academic year, Mr. McCorkle earned a 70 in Biology, a 70 Algebra I, a 72 in English 9, and a 93 in Life.  (Doc. 7-8, p. 8).

The West Alabama Mental Health Center, where Mr. McCorkle had received counseling since 2009, diagnosed Mr. McCorkle with "learning disorder not otherwise specified."  (Doc. 7-16, p. 34; *see also* Doc. 7-3, p. 27; Doc. 7-10, p. 32–92).  In addition, Robert Heilpern, M.D., Larry Dennis, Ph.D., and Nina Tocci, Ph.D., consultative reviewing physicians, examined Mr. McCorkle's records, and each found that he had a learning disability, not intellectual disability.  (Doc. 7-16, pp. 25; Doc. 7-17, pp. 15, 17).

17

Two physicians, Drs. Blanton and Alexandre B. Todorov, M.D., diagnosed Mr. McCorkle with intellectual disability.  Substantial evidence supports the ALJ's determination that neither opinion was persuasive.  On March 6, 2013, Dr. Blanton provisionally diagnosed Mr. McCorkle with mild intellectual disability, recognizing that Mr. McCorkle's low intellectual functioning could be due to depression.  (Doc. 7-10, p. 10; Doc. 7-16, p. 32; *see also* Doc. 7-3, p. 27).  Mr. McCorkle argues that Dr. Blanton's diagnosis deserves significant weight.  (Doc. 9, pp. 9–10).  Because the ALJ offered specific reasons, supported by substantial evidence, to reject Dr. Blanton's provisional intellectual disability diagnosis, under the legal standards governing this appeal, the Court must accept the ALJ's analysis.  (*See supra* pp. 16-17; *see generally* Doc. 7-3, pp. 26-27).  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) ("[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.").

Mr. McCorkle contends that the ALJ erroneously rejected the opinions of Dr. Todorov, Mr. McCorkle's treating neurologist.  (Doc. 9, pp. 7–8).  Dr. Todorov treated Mr. McCorkle for headaches.  (Doc. 7-10, pp. 7–14; Doc. 7-12, pp. 10–18).  During each visit, Dr. Todorov indicated in his treatment notes that Mr. McCorkle's medical history included "[d]iscrete intellectual disability." (Doc. 7-10, pp. 7–14; Doc. 7-12, pp. 10–18).  And, after each examination, Dr. Todorov diagnosed Mr. McCorkle with "[d]iscrete intellectual disability."  (Doc. 7-10, pp.

7–14; Doc. 7-12, pp. 10–18).  There is no evidence in the record that demonstrates what, if any, intellectual functioning testing Dr. Todorov provided to Mr. McCorkle.  The ALJ rejected Dr. Todorov's diagnoses because (1) Dr. Todorov treated Mr. McCorkle for headaches only; (2) Dr. Todorov never conducted intelligence testing; and (3) the ALJ inferred that Mr. McCorkle had malingered on some occasions during his visits with Dr. Todorov.  (Doc. 7-3, p. 27).

An ALJ must give considerable weight to the opinion of a treating physician like Dr. Todorov if the opinion is supported by the evidence and consistent with the doctor's records.  *See Winschel*, 631 F.3d at 1179.  An ALJ may refuse to give the opinion of a treating physician "substantial or considerable weight . . . [if] 'good cause' is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id.* at 1240-41; *see also Crawford*, 363 F.3d at 1159.

Here, the ALJ's decision not to credit Dr. Todorov's opinion meets the "good cause" requirement because, as discussed above, substantial evidence in the record supports the ALJ's finding that Mr. McCorkle does not suffer from intellectual disability and because Dr. Todorov's intellectual disability diagnosis is

19

conclusory.  (Doc. 7-10, pp. 7–14; Doc. 7-12, pp. 10–18).  Moreover, "good cause" exists because the ALJ articulated several reasons for giving less weight to Dr. Todorov's opinion.  (Doc. 7-3, p. 27).  Therefore, substantial evidence supports the ALJ's determination that Dr. Todorov's opinion merits "little weight."

Finally, the Court is not persuaded by Mr. McCorkle's argument that the ALJ should have explicitly considered Listing 112.05(D).  (Doc. 9, pp. 10–11). "Although [an] ALJ must consider the Listings, there is no requirement that the ALJ mechanically recite the evidence leading to his ultimate determination." *Gray ex rel. Whymss*, 454 Fed. Appx. at 750 (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)).  In addition, "[a] finding that a claimant's impairments are not contained in the Listings may be implied from [an] ALJ's decision." *Id*.

In *Gray*, a child intellectual disability case, "the ALJ did not explicitly cite Listing 112.05(D), [but, like the ALJ in this case,] found that [the child] did not meet one of the Listings."  454 Fed. Appx. at 750.  The ALJ in *Gray* also "properly cited the three-step process." *Id*. at 750.  On appeal, the Eleventh Circuit affirmed the ALJ's decision and explained that "based on evidence in the record, the ALJ could have found that [the claimant's] IQ score of 66 was inconsistent with other evidence of his activities and behavior" and that the claimant "did not have deficits in adaptive functioning." *Id*. at 750; *Turberville ex rel. Rowell*, 316 Fed. Appx. 891, 893 (11th Cir. 2009) ("We conclude that—though the ALJ did not explicitly

20

discuss why [the claimant] did not actually meet Listing 112.05—substantial record evidence supports that [the claimant's] condition did not actually or functionally meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that [the claimant] was not disabled."). Thus, while the ALJ did not address expressly whether Mr. McCorkle meets Listing 112.05(D), the ALJ considered evidence in the record that supports the conclusion that McCorkle did not meet Listing 112.05(D). Therefore, the ALJ did not err by failing to consider specifically Listing 112.05(D).

In sum, substantial evidence in the record supports the ALJ's determination that Mr. McCorkle does not meet a Listing and is not disabled as defined in the Social Security Act.[9]

---

[9] Mr. McCorkle turned 18 while his case was pending before the Appeals Council. (*See* Doc. 7-3, p. 8 (correspondence from Appeals Council to Mr. McCorkle's counsel dated December 18, 2013); Doc. 7-7, p. 2 (Mr. McCorkle was born on December 15, 1995)). Therefore, in addition to arguing that he satisfies Listing 112.05(C) and Listing 112.05(D), Mr. McCorkle asserts that he meets Listing 12.05C and Listing 12.05D, the parallel intellectual disability provisions for adults. (Doc. 9, pp. 11–16). "Although the overarching analytical framework for child and adult disability claims varies, the elements of Listings 112.05 and 12.05 substantially overlap." *Jordan v. Comm'r of Soc. Sec. Admin.*, 470 Fed. Appx 766, 768 (11th Cir. 2012) (examining a claimant's argument that "she was entitled to benefits both before and after she turned 18 because she satisfied the descriptions in the social security listings for child [intellectual disability] and adult [intellectual disability]"); *see generally Crayton*, 120 F.3d at 1219 (11th Cir. 1997). Under either the child or adult listings, "a claimant must satisfy both 'the diagnostic description in the introductory paragraph *and* any of' several additional criteria." *Jordan*, 470 Fed. Appx. at 768 (quoting 20 C.F.R. part 404, subpart P, appendix 1, §§ 12.00, 112.00) (emphasis in *Jordan*). As explained above, a valid IQ score alone is not enough. *See supra* pp. 11-12, 15. Also, as discussed above, substantial evidence supports the conclusion that Mr. McCorkle does not meet Listing 112.05(C) or 112.05(D) because Mr. McCorkle does not have significantly subaverage intellectual functioning with deficits in adaptive functioning as required by Listings. *See supra* pp. 16-20. Thus, for the same reasons that Mr. McCorkle does not meet

## V.     CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Accordingly, the Court affirms the Commissioner.  The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 17, 2017.

_____

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

Listing 112.05(C) or Listing 112.05(D), Mr. McCorkle does not satisfy Listing 12.05(C) or Listing 12.05(D).